RICHARD OTTOW, Commissioner Office of the Commissioner of Credit Unions
You have requested my opinion as to whether the Wisconsin Credit Union Savings Insurance Corporation (WCUSIC) may assist state credit unions in meeting federal insurance eligibility requirements by providing funding with outright grants and, if so, whether the Office of the Commissioner may require such funding on a case-by-case basis. The answer to both questions is yes. The factual background you present is as follows. Sections 2061 and 2062 of the recently enacted budget bill, 1985 Wisconsin Act 29, require state chartered credit unions to become federally insured or to liquidate. The present state insuring body, WCUSIC, will be liquidated upon completion of the transition. It is possible that some credit unions will qualify for federal insurance only if supplemental funding becomes available.
I.
Chapter 186 of the statutes governs credit unions. Section 186.35, Stats., created WCUSIC and regulates its operation. Although not dealing with the issue directly, the terms of section 186.35 on its face, even before amendment by 1985 Wisconsin Act 29, are consistent with the authority to make grants to member credit unions. Subsection (2) states in part that the purpose of WCUSIC is to:
 (a) Aid and assist any member credit union which develops financial difficulties such as insolvency, nonliquidity or liquidation, in order that the savings of each member of a member credit union shall be protected or guaranteed . . . .
 (b) Cooperate with its member credit unions and the office of the commissioner for the purpose of improving the general welfare of credit unions in this state. *Page 242 
Subsection (3)(d) states in part that WCUSIC is empowered to "[a]dvance funds to aid member credit unions to operate and to meet liquidity requirements." It would seem that the prospect of a credit union facing liquidation for an inability to meet mandatory insurance requirements would justify "aiding" the member by "advancing funds to operate" in an effort to improve the "general welfare" of credit unions.
The meaning of a statutory provision must be considered in light of the entirety. State v. Fouse, 120 Wis.2d 471,355 N.W.2d 366 (Ct.App. 1984). The new act requires that credit unions apply for federal insurance within 180 days of the effective date of the act and be so certified within forty-two months or face mandatory liquidation by the Commissioner. 1985 Wisconsin Act 29, secs. 2061r, 2061t and 2061y. The newly created section 186.34 (5) mandates that "every credit union . . . shall take . . . every action lawfully required to maintain federal share insurance coverage in full force and effect, and shall refrain or desist from taking any action that is likely to cause termination of federal share insurance coverage." 1985 Wisconsin Act 29, sec. 2061y. The obvious intent of chapter 186, as amended, is to promote the transition to federal insurance. Efforts by WCUSIC, consistent with its statutory directives, to promote an orderly transition must be held to be within the scope of its authority.
The Legislature did not specifically deal with grants to effectuate federal insurability in the amendments to section 186.35. The amendments to section 186.35 other than those discussed above essentially deal with termination after the conversion to federal insurance. 1985 Wisconsin Act 29, secs. 2062b, 2062e, 2062h, 2062L, 2062n, 2062r, 2062u. Termination occasions the distribution of any remaining assets to member credit unions, in essentially a pro rata fashion, but only after all WCUSIC liabilities have been paid and member credit unions have been liquidated or granted federal coverage. 1985 Wisconsin Act 29, secs. 2061y and 2062u. Despite a provision in the act that the final distribution is to be reduced by any previous payout to the credit union (sec. 2062u), I see nothing in the amendments to section 186.35 that create a vested interest of each credit union in the assets of WCUSIC, or would otherwise limit their use pursuant to pre-existent legislative mandates. Moreover, the net reduction to WCUSIC assets could *Page 243 
well be greater by liquidation assistance than by grants to qualify for federal insurance.
In the absence of legislative history on point the following correspondence supports my conclusion. In a March 27, 1985, letter the Governor indicated that his intent in proposing mandatory federal insurance for credit unions was to avoid the panic that had occurred in a neighboring state from a loss of public confidence in privately insured savings and loans.[1]
The Governor of the State of Ohio closed seventy-one privately insured, state chartered financial institutions after a surge of panic withdrawals by depositors on a privately insured savings bank that had sustained large losses resulting from the collapse of a security company.[2] If the Governor's support for this legislation was based upon a desire to avoid panic, it can reasonably be inferred that the Legislature had a similar intent in enacting the amendments to chapter 186. It would be inconsistent with this intent to hold that WCUSIC does not have authority to utilize its resources to minimize investor panic by acting before liquidation becomes necessary. Therefore, it is my opinion that WCUSIC can make grants to credit unions to assist in meeting eligibility requirements for federal insurance.
II.
I further conclude that the commissioner may require WCUSIC to provide such grants on a case-by-case basis. The commissioner has primary responsibility for enforcement of all laws relating to credit unions and exclusive supervision of WCUSIC. 64 Op. Att'y Gen. 7 (1975).
Section 186.35 on its face clearly indicates that WCUSIC is to function under the direct supervision of the commissioner. Subsection (I) states in part that "[t]his corporation shall be under the exclusive supervision of the commissioner." Subsection (7) states in part that "[t]he corporation shall be subject to supervision and an annual examination by the office of the commissioner." Subsection *Page 244 
(2) provides in part that "[t]he . . . corporation shall . . . [c]ooperate with . . . the commissioner for the purpose of improving the general welfare of credit unions . . . ." Subsection (3)(e), which empowers WCUSIC to "[a]ssist in the orderly liquidation of credit unions," puts it in a clearly subordinate position to that of the commissioner who effects liquidations under section 186.29. Subsection (5)(d) requires that special assessments be levied against credit unions only upon the approval of the commissioner. Subsection (8) empowers WCUSIC to make recommendations to the commissioner regarding sanctions against a credit union for mismanagement, but not to take any direct action. The original articles of incorporation of WCUSIC as well as the bylaws and any amendments require approval of the commissioner. Sec. 186.35 (1) and (9), Stats. Even liquidation of WCUSIC requires antecedent action by the commissioner and his supervision of the winding up of its affairs. Sec. 186.35 (11), Stats., created by 1985 Wisconsin Act 29, sec. 2062u.
The narrowly circumscribed authority of WCUSIC stands in sharp contrast to the unfettered discretion of the commissioner. Sec. 186.012 (2), Stats. (enforce all laws relating to credit unions); sec. 186.02 (3), Stats. (approve or reject the proposed creation of credit unions); sec. 186.03, Stats. (enjoin certain activities); sec. 186.04 (1), Stats. (assess examination and supervision fees against credit unions); sec. 186.09, Stats. (regulate credit union lending practices); sec. 186.11, Stats. (control credit union investments); sec. 186.112, Stats. (control credit union borrowing); sec. 186.113, Stats. (regulate certain services to or by credit unions); sec. 186.119, Stats. (control credit union examiners); sec. 186.16, Stats. (limit dividends); sec. 186.17, Stats. (require reserves in excess of the statutory guidelines); sec. 186.18, Stats. (exercise limited control over credit union dissolutions); sec. 186.19, Stats. (regulate bonding of credit union officers); sec. 186.22, Stats. (regulate the Credit Union Finance Corporation); sec. 186.23, Stats. (issue rules and regulations for the conducting of credit union business upon concurrence of the credit union review board); sec. 186.24, Stats. (remove credit union officials with the concurrence of the credit union review board); sec. 186.25, Stats. (control and supervise all credit unions transacting business in this state, determine reporting requirements, and assess forfeitures); sec. 186.26, Stats. (cause each credit union to be examined or audited annually); sec. 186.28, Stats. (prescribe bookkeeping procedures and assess forfeitures for violations); sec. *Page 245 
186.29, Stats. (summary seizure of credit union business and property, suspension of operations or officers, commence liquidation, take automatic title to all credit union assets, initiate court action); sec. 186.30, Stats. (freeze dividends with concurrence of the credit union review board, depreciate shares, restrict loans, conveyances, or disbursements); sec.186.31, Stats. (approve or reject consolidations); sec. 186.34, Stats. (1985 Wisconsin Act 29, sec, sec. 2061y) (suspend/liquidate credit unions failing to apply for/obtain federal insurance). The above provisions, for the most part, empower the commissioner to make case-by-case determinations, and not just set industry-wide standards. Generally, the commissioner is subject to the credit union review board only upon appeal or after-the-fact review. Sec. 186.015, Stats.
If WCUSIC essentially can engage in discretionary activities only upon approval of the commissioner, and the commissioner can exercise discretion over virtually all aspects of credit union functioning, including WCUSIC activities, it logically follows that a decision by WCUSIC to refrain from exercising a power within its authority must also be subject to the approval of the commissioner. To conclude otherwise would be to grant WCUSIC a veto power over the commissioner's statutory prerogative, and thwart the legislative mandate of an orderly transition to federal insurance coverage for credit unions. Therefore, I conclude that the commissioner can require WCUSIC to make the grants discussed above on a case-by-case basis.
BCL:MJL
[1] Letter from Anthony S. Earl, Governor, State of Wisconsin, to Edgar F. Callahan, Chairman, National Credit Union Administration, dated March 27, 1985.
[2] The Subcommittee on Commerce, Consumer and Monetary Affairs of the Committee of Government Operations, United States House of Representatives, Statement of Edwin J. Gray, Chairman of the Federal Home Loan Bank Board, April 3,